IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANICE MASON | * |
| | * |
| v. | *  Civil No. JKS-10-2157 |
| | * |
| MICHAEL J. ASTRUE | * |
| Commissioner of Social Security | * |
| | * |

**MEMORANDUM OPINION**

Plaintiff Janice M. Mason brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the Act). Both parties' motions for summary judgment are ready for resolution, *see* ECF Nos. 16 and 18, and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Mason's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

1. **Background.**

    Mason filed applications for DIB and SSI on December 20, 2006, alleging a disability onset date of December 2, 2006. R. 112, 115. The Commissioner denied Mason's applications on June 27, 2007 and upon reconsideration on July 26, 2007. R. 48-50, 57-58. Mason then requested a hearing before an administrative law judge (ALJ). The ALJ conducted a hearing on June 17, 2009, R. 24-45, and subsequently issued a decision finding Mason not disabled under the Act. R. 9-18. On June 4, 2010, the Appeals Council denied Mason's request for review of the ALJ's decision. R. 1-3.

2. **ALJ's Decision.**

    The ALJ evaluated Mason's claim using the five-step sequential process set forth in 20

C.F.R. § 404.1520.[1]  R. 9-18.  At step one, the ALJ found that Mason had not performed substantial gainful activity since her alleged onset date.  R. 11.  At step two, the ALJ found that Mason had eight severe impairments: (1) residuals of a compound fracture of her left ankle, fibula and tibia; (2) osteoarthritis; (3) lateral epicondylitis of her right elbow; (4) scoliosis; (5) carpal tunnel syndrome; (6) asthma; (7) anxiety disorder; and (8) affective disorder.  R. 11.  Proceeding to step three of the evaluation process, the ALJ found that Mason's impairments did not individually, or in combination, meet or equal an impairment in the Listings of Impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 12.

The ALJ next found that Mason's Residual Functional Capacity (RFC) permitted her to perform a range of sedentary work as long as that work: (1) did not require climbing ladders, ropes, or scaffolds; (2) allowed the flexibility to alternate between sitting for one to two hours and standing for one to two hours; (3) did not involve constant, fine or gross manipulation or concentrated exposure to environmental pollutants; and (4) required only unskilled tasks involving no more than occasional contact with co-workers, supervisors, or the public.  R. 12.  The ALJ accepted the VE's testimony that, given Mason's RFC, she could not perform any of her past relevant work.  R. 16.  The ALJ went on to find, based on the VE's testimony and Mason's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Mason can perform.  R. 17.  Specifically, the ALJ cited call-out operator, charge account clerk and surveillance-system monitor.  R. 17.  In light of these findings, the ALJ concluded that Mason was not disabled under the Act.  R. 18.

---

[1] Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity.  20 CFR 404.1520(b).  At step two, the ALJ must decide whether the claimant has a medically determinable impairment that is "severe."  20 CFR 404.1520(c).  At step three, the ALJ is required to determine whether the claimant's impairment meets the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1.  20 CFR 404.1520(d), 404.1525, and 404.1526.  In step four, the ALJ must determine the claimant's residual functional capacity, *see* 20 CFR 404.1520(e), and decide whether the claimant can perform the requirements of her past relevant work.  20 CFR 404.1520(f).  Finally, in step five, the ALJ must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience.

3. **Standard of Review.**

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and quotation marks omitted). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

4. **Discussion.**

    A. **The ALJ's determination of Mason's RFC**

Mason contends that the ALJ erred in assessing her RFC by failing to properly evaluate: (1) the opinions of Dr. M. Prout, a state agency examiner and (2) the opinions of Ms. Elaine L. Cira, the nurse practitioner who conducted an assessment of Mason's ability to perform work-related activities. ECF No. 16 at 5-7.

Mason first contends that the ALJ erred by failing to incorporate in Mason's RFC assessment some of the limitations noted by Dr. Prout.[2] *Id.* at 6. Mason asserts that the ALJ should have included limitations to simple instructions, a low-stress environment, and interactions with a small number of people. *Id.* She further asserts that the ALJ improperly omitted limitations on the ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; perform at a consistent pace without an

---

[2] The RFC represents the most that a claimant can do, both physically and mentally, despite limitations caused by her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3

unreasonable number of rest periods; accept instructions and respond appropriately to criticism from supervisors; and get along with co-workers without distracting them or exhibiting behavioral extremes. *Id.*

On August 8, 2008, Dr. Prout conducted a mental RFC assessment and found that Mason "can understand and follow simple but not complex directions," "can appropriately interact with a limited number of people but not crowds," and "can adequately function in low but not high stress environments." R. 320. The ALJ addressed Dr. Prout's report directly and gave it "significant weight" because it was consistent with the record as a whole and supported by substantial evidence. R. 16. In setting out Mason's RFC, the ALJ incorporated Dr. Prout's assessment by noting that Mason "has moderate difficulties in social functioning and in concentration, persistence, or pace resulting in being limited to performing unskilled tasks involving no more than occasional contact with co-workers, supervisors or the public." R. 12. The ALJ further described Mason's RFC by noting that the term "'[m]oderate' precludes the attention and concentration required for high stress work and complex work, but is not at a level of severity that precludes the attention and concentration required for less stressful work below the skilled level that involves using common sense while following instructions." R. 12 n.1. Thus, contrary to Mason's assertions, the ALJ specifically addressed Mason's limitations associated with, *inter alia*, following instructions, working in a high stress environments, and interacting with people.

Next, Mason argues that the ALJ failed to properly evaluate the opinions of her treating therapist, Ms. Cira. Specifically, Mason contends that the ALJ was required to analyze Ms. Cira's opinions using the factors identified in 20 C.F.R. 404.1527. However, the ALJ is only required to apply those factors when analyzing "acceptable medical sources." *See* 20 C.F.R.

404.1513(a).  Ms. Cira is not an "acceptable medical source"; rather, therapists are "other sources," as defined in 20 C.F.R. 404.1513(d), and an ALJ, when analyzing opinions of such sources, *may*, but is not required to, use the factors set out in 20 C.F.R. 404.1527(d).  *See* SSR 06-03p, 2006 SSR LEXIS 5, 10-11 ("Although the factors in 20 CFR 404.1527(d) and 416.927(d) explicitly apply only to the evaluation of medical opinions from 'acceptable medical sources,' these same factors *can* be applied to opinion evidence from 'other sources.'") (Emphasis added).

Mason also argues that the ALJ should have granted Ms. Cira's opinion greater weight because her opinion was consistent with Dr. Prout's opinion, except that Dr. Prout labeled Mason's limitations as moderate and Ms. Cira labeled them as serious.  However, there is nothing in the record to suggest that the ALJ overlooked the similarities or distinctions between Ms. Cira's opinion and Dr. Prout's opinion.  Indeed, the very reason that the ALJ assigned little weight to Ms. Cira's opinion is that her opinion was "inconsistent with [Mason's] relatively conservative mental health treatment history."  R. 16.  Ms. Cira is the only professional who labeled Mason's mental limitations as serious, and, as noted by the ALJ, her opinion was based in part on Mason's own self-report.  *Id.*  The ALJ recognized that Ms. Cira's conclusions were inconsistent with the substantial evidence in the record and properly assigned less weight to Ms. Cira's opinion.

Finally, Mason contends that the ALJ inappropriately dismissed Ms. Cira's opinion because he misunderstood the difference between an issue reserved to the Commissioner and a medical source statement.  ECF No. 16 at 9.  In her report, Ms. Cira noted that Mason's "[a]nxiety is physically disabling."  R. 378.  The ALJ recognized this and correctly emphasized that in his opinion "that the final responsibility for deciding whether an individual is disabled

under the Act is reserved to the Commissioner of Social Security." R. 16 (citing 20 C.F.R. 404.1527(e) and SSR 96-5p). Indeed, even if a medical source provides an opinion such as whether a claimant is "disabled" or "unable to work," the Commissioner is not required to give special significance to such an opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Thompson v. Astrue*, 442 Fed. Appx. 804, 808 (4th Cir. 2011) (explaining that opinions on issues reserved to the commissioner "are not afforded any special significance"). Here, the ALJ considered Ms. Cira's evaluation fully, but properly decided to disregard her conclusion that Mason had a disabling psychological condition. The decision to ignore Ms. Cira's conclusion as to Mason's disability status does not mean that the ALJ failed to properly evaluate Ms. Cira's report.[3]

### B. The ALJ's reliance on the testimony of the VE

Mason asserts that the ALJ failed to include numerous limitations in his hypothetical questions to the VE. Specifically, Mason contends that the ALJ failed to include, *inter alia*, a limitation to simple instructions, a limitation to a low stress environment, or a limitation restricting the amount of interaction with other people. ECF No. 16 at 10-11.

The only relevant limitations for purposes of the hypothetical questions are those that are included in the RFC. The Fourth Circuit has made clear that "it is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert." *Fisher v. Barnhart*, 181 Fed. Appx. 359, 364-65 (4th Cir. 2006). As explained in *Fisher*, "[a] claimant very well might have some impairments under control such that they do not manifest themselves in any way that would limit the claimant's capacity for work." *Id.*

---

[3] Mason also argues that the ALJ was required to analyze Ms. Cira's opinion using the criteria set out in 20 C.F.R. 404.1527, but as the court explained earlier, the ALJ is only required to apply those factors when analyzing "acceptable medical sources," *see* 20 C.F.R. 404.1513(a), and Ms. Cira is not an "acceptable medical source."

Here, not only did the ALJ's hypothetical questions to the VE include the same limitations reflected in Mason's RFC, but the questions also included many of the limitations that Mason now contends were omitted:

> The person also has moderate difficulties in social functioning and moderate difficulties in concentration, persistence or pace, which results in the person being limited to performing only unskilled tasks, low complex tasks; and also involving no more than occasional contact with the coworkers, supervisors or the public; and also should avoid . . . work or tasks involving a high stress work environment.

R. 43.  Mason's assertion that the ALJ improperly omitted certain limitations is unsupported by the record.

Mason next argues that the occupations identified by the VE (i.e. call out operator, charge account clerk or surveillance system monitor) are outside the range of work that she is capable of performing.  ECF No. 16 at 11.  She claims that these jobs require her to follow detailed instructions and deal with people, both of which are tasks that, according to Mason, she has difficulty performing.  Mason points to a report completed by Dr. Prout indicating that she is moderately limited in her ability to understand detailed instructions and interact appropriately with the general public.  R. 318-19.

With regard to Mason's ability to follow instructions, each of the three occupations identified by the VE requires a reasoning development level of three, which calls for "commonsense understanding to carry out instructions . . . and [the ability to deal] with problems involving several concrete variables in or from standardized situations."  *See* Dictionary of Occupational Titles (DOT), Appx. C, 1991 WL 688702 (4th ed. 1991); Call-Out Operator, DOT 237.367-014, 1991 WL 672186; Charge-Account Clerk, DOT 205.367-014, 1991 WL 671715; Surveillance-System Monitor, DOT 379.367-010, 1991 WL 673244.  However, none of these jobs requires the employee to follow *detailed* instructions; Mason has simply read this additional

requirement into the job descriptions.  The ALJ specifically limited Mason's job responsibilities to "unskilled tasks, low complex tasks," R. 43, and courts have routinely found that a reasoning level of three is consistent with limitations to simple, unskilled tasks.  *See Clawson v. Astrue*, 2013 U.S. Dist. LEXIS 5710, *17-18 (W.D. Pa. Jan. 15, 2013) ("[T]here is no per se conflict between a reasoning level 3 job and the limitation to simple, routine tasks/unskilled work."); *Clarkson v. Comm'r*, 2013 U.S. Dist. LEXIS 21729, *85-86 (D. Md. Jan. 24, 2013) ("[C]ourts have consistently found that reasoning levels of two or three are consistent with limitations to simple instructions."); *Yates v. Astrue*, 2012 U.S. Dist. LEXIS 10406 (D. Md. Jan. 30, 2012) (finding evidence that plaintiff completed 11th grade and tested in the upper end of borderline intellect did not support her argument that she is limited to jobs with a reasoning level of two, but instead is capable of performing work at reasoning level three or four).

      Although Dr. Prout indicated that Mason was moderately limited in her ability to interact appropriately with the general public, he concluded that she could "appropriately interact with a limited number of people but not crowds."  R. 320.  None of the occupations identified by the VE requires Mason to deal with crowds or more than a limited number of people.  *See* Call-Out Operator, DOT 237.367-014, 1991 WL 672186; Charge-Account Clerk, DOT 205.367-014, 1991 WL 671715; Surveillance-System Monitor, DOT 379.367-010, 1991 WL 673244.  The occupations involve one-on-one contact with individuals, but not groups.  Moreover, in the case of call-out operator and surveillance-system monitor, the DOT specifies that contact with the public shall take place exclusively over the telephone.  The ALJ had substantial evidence to conclude that Mason retained the functional capacity to perform these occupations.

**5. Conclusion.**

For the foregoing reasons, Mason's motion for summary judgment is denied and the Commissioner's motion for summary judgment is granted.

Date: March 12, 2013                                             /S/
                                                            JILLYN K. SCHULZE
                                                       United States Magistrate Judge